United States District Court
Southern District of Texas
**ENTERED**
September 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **JOE MARTINEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:23-CV-00075** |
| | § | |
| **MERIDIAN SECURITY INSURANCE** | § | |
| **COMPANY,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Meridian Security Insurance Company's Motion for Summary Judgment. (Dkt. No. 47). The motion is fully briefed, and the Court held a hearing on the motion on March 30, 2026. (Min. Entry for Mar. 30, 2026). For the reasons discussed below, the motion for summary judgment is granted.

## I. BACKGROUND

This case involves an insurance dispute between Plaintiff Joe Martinez and Defendant Meridian Security Insurance Company concerning a claim for storm damage to a residential home. (Dkt. No. 47 at 3; Dkt. No. 52 at 1).[1] The parties agree that Martinez's home was insured by Meridian when it was damaged in a hailstorm. Soon after the storm, on August 18, 2022, Martinez filed a property loss claim under his insurance policy (the Policy) for both interior water damage and exterior roof damage resulting from the storm. (Dkt. No. 52-3 at 2).

The parties did not agree as to the amount of loss, and Martinez filed suit against Meridian in the 406th District Court of Webb County, Texas on June 27, 2023. (Dkt. No. 1-2 at 3). Meridian subsequently removed the case to federal court. (Dkt. No. 1). In his state court petition, Martinez asserts claims for: breach of contract; noncompliance with the Texas Insurance Code; violation of the prompt payment of claims statute under

---

[1] When citing to the page numbers of any document in the record, the Court cites to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

the Texas Insurance Code; violation of the Texas Deceptive Trade Practices Act; breach of the common law duty of good faith and fair dealing; and common law fraud. (Dkt. No. 1-2 at 10–17).

After the case was removed to this Court, Martinez invoked appraisal under the insurance policy and designated Michelle Elko as his appraiser. (Dkt. No. 52 at 7). Meridian designated Bryan Scanlan as its appraiser. (*Id.*). The parties requested that the Court appoint an umpire, and the Court appointed David Poynor to serve as umpire on January 9, 2024. (Dkt. No. 13 at 2; Dkt. No. 19; Min. Entry. Dec. 18, 2023).

The appraisal award was issued on May 13, 2024. (Dkt. No. 47 at 7; Dkt. No. 52 at 8). The umpire, Poynor, stated in an email that "with consideration to all the information provided to me by both appraisers, and our mutual onsite property inspection, I did not include the roof in the amount of the loss, because I do not believe the roof was wind damaged." (Dkt. No. 47-9 at 25). Meridian tendered $5,718.51 to Martinez on May 24, 2024.[2] (Dkt. No. 52-13 at 2). Martinez acknowledges the payment but argues that the award should have included the cost to repair the roof. (*See* Dkt. No. 52 at 8). Martinez did not accept the tender of the award from Meridian. (Dkt. No. 30).

The Court turns to the pending motion.

## II. SUMMARY JUDGMENT LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). Once a party has properly moved for summary judgment under

[2] Meridian states that this amount includes the replacement cost value of the award, less the deductible and prior payment, as well as all the statutory interest that could be owed on the award. (Dkt. No. 47 at 7). Martinez does not dispute this representation.

Rule 56, the non-movant must demonstrate which "specific facts" show that there is a genuine dispute. *Celotex*, 477 U.S. at 324. A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Id.* at 255. However, the presence of a mere scintilla of evidence is not sufficient to overcome a motion for summary judgment. *Id.* at 252.

## III. EVIDENTIARY OBJECTIONS

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'").

Martinez asserts boilerplate objections to much of Meridian's evidence and objects to "any and all evidence proffered with Defendant's Motion for Summary Judgment to the extent that much of the same were not presented to Plaintiff during discovery in this matter." (Dkt. No. 52 at 2–3).

The Court does not rely on the majority of Meridian's exhibits in its analysis below. The only exhibit that Martinez objected to and that the Court relies on in its analysis is approximately one page in Meridian's Exhibit A-8, (Dkt. No. 47-9 at 25). Martinez objects to each of Meridian's exhibits generally "to the extent they contain inadmissible hearsay" and objects to Exhibit A-8 as (1) improperly authenticated and (2) containing inadmissible hearsay. (Dkt. No. 52 at 3).

Exhibit A-8 is 188 pages long and contains numerous documents including court orders and various emails between appraisers. (Dkt. No. 47-9). As to the hearsay objections, Martinez does not specify which parts of the documents are objectionable. The Court is thus left to guess at the merit of the objections. Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken. *See United States v. Avants*, 367 F.3d 433, 445

(5th Cir. 2004). Objections lacking specificity do not satisfy the requirements of Rule 103. *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998). "A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection." *Id.* (citations omitted). Even so, the Court has attempted to avoid relying on obviously hearsay or otherwise inadmissible statements.

As to Martinez's authentication argument, "[a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017); Fed. R. Civ. P. 56(c). The evidence merely must be "*capable* of being presented in a form that would be admissible in evidence." *Maurer*, 870 F.3d at 384 (quoting *LSR Consulting, LLC*, 835 F.3d at 534). Martinez's objections to Dkt. No. 47-9 are **OVERRULED**.

Because the remaining evidence does not affect the Court's analysis, Martinez's remaining objections are **DENIED as MOOT**.

## IV. DISCUSSION

Meridian argues that the appraisal award is binding and enforceable. (Dkt. No. 47 at 12). Meridian contends that, because it tendered the appraisal award, it did not breach the insurance contract and Martinez's extra-contractual claims cannot succeed. (Dkt. No. 47 at 8–21). Martinez argues in response that the appraisal award is "faulty," (Dkt. No. 52 at 1), and that "there was a fundamental error within the appraisal award and therefore the portion of the appraisal award with such error is void." (*Id.* at 9). Martinez argues that the appraisal award erroneously omits damage to his roof, and thus, Meridian "is not excused from the payment of those damages." (*Id.* at 19). Martinez asserts three reasons the appraisal award is defective and should be set aside: (1) the award was the result of fraud, accident, or mistake, (2) the appraisal panel exceeded its authority by finding that the roof damage was not covered under the policy, and (3) Meridian's appraiser and the umpire were not competent or impartial. Martinez further contends that, even if the appraisal award is valid, it does not relieve Meridian of liability for breach of contract or extracontractual claims.

The Court addresses each issue in turn.

**A. Validity of the Appraisal Award**

"Appraisal clauses in Texas insurance policies have long provided a mechanism to resolve disputes between policy holders and insurers about the amount of loss for a covered claim." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019) (citing *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011)). Appraisal "binds the parties to have the extent or amount of the loss determined in a particular way." *Id.* (quoting *In re Allstate Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)). Under Texas law, "every reasonable presumption will be indulged to sustain an appraisal award." *Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 258 (5th Cir. 2017), *as revised* (Sept. 27, 2017). The effect of an appraisal provision "is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Id.* (citing *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 472 (5th Cir. 2013)).

Texas courts recognize "three situations in which the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy." *MLCSV10 v. Stateside Enterprises, Inc.*, 866 F. Supp. 2d 691, 698 (S.D. Tex. 2012) (citing *Lundstrom v. United Servs. Auto. Ass'n–CIC,* 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

The Court finds that Martinez has failed to raise a genuine dispute of material fact that the appraisal award should be set aside. In reaching this conclusion, the Court cannot ignore that "appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable." *TMM Investments, Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 472 (5th Cir. 2013) (quoting *Richardson v. Allstate Tex. Lloyd's,* No. 05–06–00100–CV, 2007 WL 1990387, at *3 (Tex. App.—Dallas July 11, 2007, no pet.)). Texas courts indulge "every reasonable presumption" in favor of sustaining an appraisal award. *Mainali Corp.*, 872 F.3d at 258. Consistent with Texas law favoring upholding appraisal awards, a party seeking to invalidate an otherwise binding appraisal award bears the burden of demonstrating one of the recognized grounds for invalidation under Teas law. *See MLCSV10*, 866 F. Supp. 2d at 698. Mere disagreement with an appraisal panel's

conclusions regarding the amount of loss outside of one of the recognized grounds for vacating an appraisal award is insufficient to invalidate an appraisal award. *See In re Germania Farm Mut. Ins. Ass'n,* No. 13-25-00125-CV, 2025 WL 2217431, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2025, no pet.).

**1. The Exclusion of Damage to the Roof was not Fraud, Accident, or Mistake**

Martinez argues that the omission of the damages to his composition shingle roof and roofing components was an intentional or negligent act and that the roof damage was not considered through fraud, accident, or mutual mistake. (Dkt. No. 52 at 13, 15). Martinez argues that the omission renders the appraisal award invalid and non-binding. (*Id.* at 13–15).

Martinez provides evidence that multiple individuals noted damage to the roof. For example, Martinez himself reported that his property sustained roof damage, which led to interior water damage to the bedroom, foyer, and garage. (Dkt. No. 52-3 at 2, 4). On August 26, 2022, Meridian utilized the services of Laine Wiggins, of SeekNow to investigate Martinez's loss. (*Id.* at 5). Wiggins confirmed the interior water damage was the result of a roof leak. (*Id.* at 6). Later, a representative of Meridian, Evan Kitka, stated, "we agree there is damage to the roof, but it happened on a different [date of loss]." (*Id.* at 9). On April 16, 2024, Elko, Martinez's appraiser, participated in the appraisal hearing. (Dkt. No. 52-9 at 3). Elko states in her affidavit that, at the appraisal hearing, she demonstrated that the roof shingles were wind damaged. (*Id.*). Elko states in her affidavit that she objects to the appraisal award and believes that it is invalid. (*Id.*).

The record demonstrates that the alleged roof damage was presented to and considered by the appraisal panel throughout the appraisal process, but that one appraiser disagreed as to the determination of the extent or amount of covered loss. Meridian's inspector, Laine Wiggins, reported that the roof was in poor condition with thermal cracking and nail pops. (Dkt. No. 52-3 at 7). Wiggins stated that, although the roof had "some hail hits. . . maybe pea sized" he was unable to discern the main cause of the damage. (*Id.*). Elko testified that she inspected the roof and, at the appraisal hearing, she articulated the roof damage that she observed. (Dkt. No. 52-9 at 3). Elko identified what she believed to be wind-damaged shingles and explained the basis for her conclusions during the appraisal inspection. (*Id.*). According to Elko's affidavit, during

the appraisal hearing, Poynor accepted Scanlan's differing analysis, finding that the damage to the roof was caused by improperly installed shingles. (*Id.*).

Poynor stated in an email that "with consideration to all the information provided to me by both appraisers, and our mutual onsite property inspection, I did not include the roof in the amount of the loss, because I do not believe the roof was wind damaged." (Dkt. No. 47-9 at 25). Poynor pointed out that various causes could have led to the roof damage. For instance, the roof has no attic ventilation, and he believed the lack of ventilation could have caused cracking on the shingle surface that caused the adhesive strip to become unsealed. (*Id.*) Poynor stated that he found one shingle on the roof that he would consider wind damaged and noted other conditions on the roof that were due to previous repairs later confirmed by the owner. (*Id.*). Poynor added that, without the ability to inspect the attic, he could not conclude that wind damaged the roof and caused the water intrusion. (*Id.*).

The evidence before the Court demonstrates that the parties disagreed on the existence or extent of covered roof damage. Martinez has not identified any evidence that the appraisal panel failed to consider Martinez's claim or omitted the roof damage through fraud, accident, or mistake. As the Court describes below, the fact that the appraisal award assigned no value to Martinez's roof damage reflects the panel's determination regarding the amount of covered loss. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 893–94 (Tex. 2009) ("An appraisal is for damages caused by a specific occurrence, not every repair a home might need.").

Evidence that the appraisers disagreed on the extent or cause of Martinez's alleged roof damage does not, without more, establish that the appraisal award was procured through fraud, accident, or mistake. Such disagreements are inherent in the appraisal process and are the sort of disputes appraisal provisions are intended to resolve. *See id.* at 892–93. As such, viewing the evidence in the light most favorable to Martinez, the Court concludes that Martinez has failed to demonstrate a genuine dispute of material fact that the appraisal award was made without authority, resulted from fraud, accident, or mistake, or otherwise failed to comply with the appraisal provision contained in the insurance policy.

Further, to the extent that Martinez also argues that the appraisal is invalid because it does not represent an honest assessment of necessary repairs, Martinez has not met his burden to identify a material fact dispute. As the Court stated above, the evidence demonstrates that the appraisers disagreed about the extent of covered losses, and the umpire used his judgment to reach an ultimate decision. Without additional evidence, Martinez has not met his burden to demonstrate a material fact question as to whether the appraisal award was an honest assessment of the necessary repairs.

### 2. The Appraisal Panel Did Not Exceed its Authority by Failing to Include Roof Damage

Martinez also contends that the appraisal award should be set aside because the appraisal panel concluded that damage to the composition roof was not covered and thus acted outside the scope of the appraisal panel's authority. (Dkt. No. 52 at 15). Martinez argues that this conclusion necessarily involved a coverage issue that the panel was prohibited from considering. Martinez asserts that the language of the appraisal provision in the contract limits the panel to deciding only the amount of loss, not the cause of the loss. To support his argument, Martinez cites *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679 (Tex. App.—Dallas 1996, writ denied) and *Holt v. State Farm Lloyds*, No. 98-CV-1076, 1999 WL 261923 (N.D. Tex. Apr. 21, 1999). (Dkt. No. 52 at 12).

In *Wells*, which was decided in 1996, Plaintiff's home sustained damage due to foundation movement. 919 S.W.2d at 681. The umpire and one appraiser determined that the damage to the home was not caused by a covered cause. *Id.* at 681. Thus, the trial court entered a take-nothing judgment against the homeowners. *Id.* The Dallas Court of Appeals considered whether the appraisers were authorized and empowered to determine what caused or did not cause the claimed loss. *Id.* at 680–81. The court noted that, at that time, "no reported Texas case has decided the issue of whether the authority of appraisers under the appraisal section of an insurance policy is limited to determination of only the *amount* of loss as distinguished from determining *cause* of loss, and *coverage* and *liability* for the loss." *Id.* at 683–84. The court determined that appraisers had no power or authority to determine questions of causation, coverage, or liability. *Id.* at 681, 685. Thus, the court reversed the district court's judgment and remanded for a trial on the merits.

A few years later, in *Holt*, the District Court for the Northern District of Texas similarly found that an appraiser's "statement that none of the damage to the roof was the result of hail" was an impermissible expression of damage causation. 1999 WL 261923 at *3. The court found that the appraiser's finding "was made without authority because it was outside the scope of the appraisal process, which the parties agreed was to be used to determine only the amount of the loss." 1999 WL 261923 at *3.

More recently, however, in *State Farm Lloyds v. Johnson*, the Supreme Court of Texas held that disputes about the extent of covered damage are generally within the scope of appraisal, even when they include some questions of causation. *Johnson*, 290 S.W.3d at 893. The Court explained that "when different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892. The Court further clarified that "when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* at 892. Appraisers must also make such determinations "when the causation question involves separating loss due to a covered event from a property's pre-existing condition." *Id.* at 892–93. The Court reasoned that if "appraisers can never allocate damages between covered and excluded perils, then appraisals can never assess hail damage unless a roof is brand new." *Id.*

The Court finds Martinez's arguments unpersuasive. Here, as the Court explained above, Poynor stated in an email that, based on all the information, he did not include the roof in the amount of loss because he did not believe it was wind damaged. (Dkt. No. 47-9 at 25). Poynor pointed to the roof's pre-existing condition due to thermal expansion, previous repairs, and construction defects. (*Id.*). As the Supreme Court of Texas explained, appraisers may have to separate the damage caused by a covered event from the damage caused by a pre-existing condition before a court can decide liability. Martinez has not demonstrated a material fact dispute that the appraisal involved a coverage issue that the panel was prohibited from considering.

**3. Meridian's Appraiser and the Umpire Were Not Incompetent or Partial**

The Court next considers Martinez's argument that the appraisal award should be set aside because Meridian's appraiser and the umpire lacked the competence and impartiality required by the policy. (Dkt. No. 52 at 16, 19). Martinez highlights Elko's

affidavit, noting that Elko asked Scanlan how long Poyner was on his preferred umpire list at the appraisal hearing. Scanlan and Poynor both stated "three years." (*Id.*; Dkt. No. 52-9 at 3). Martinez contends that this relationship calls into question Scanlan and Poyner's impartiality. (Dkt. No. 52 at 17–19).

In support of this argument, Martinez points to a case from a Texas Court of Appeals, *Franco v. Slavonic Mutual Fire Insurance Association*, 154 S.W.3d 777 (Tex. App.—Houston [14th Dist.] 2004). There, the plaintiff argued that the appraisal award should have been set aside because the insurance company's appraiser was an interested, prejudiced, and biased appraiser. *Id.* at 785. The court held that the plaintiff did not present summary judgment proof of bias because "[t]he showing of a pre-existing relationship, without more, does not support a finding of bias." *Id.* at 786–87 (collecting cases). Instead, a party seeking to invalidate an appraisal award on this basis must present evidence of bias in calculating the appraisal award. *See id.* at 786.

Martinez has failed to make the required showing because he has merely identified evidence of a pre-existing relationship. The evidence establishes only that Poyner had previously served as an umpire in appraisals involving Meridian. Martinez offers no evidence that Poyner had a financial interest in the outcome of this appraisal, that he was subject to Meridian's control, or any other evidence indicating bias during the appraisal process. *See Franco*, 154 S.W.3d at 787. The evidence shows that Poyner personally inspected the property, reviewed the competing estimates and supporting materials submitted by both appraisers, considered the positions advanced by each side, and independently prepared the estimate that ultimately formed the basis of the appraisal award. (*See* Dkt. No. 47-9 at 25). The Court also notes that Poynor was appointed by the Court as umpire in this appraisal process. (Dkt. No. 19). It was undisputed that Poynor had the requisite subject-matter experience, and the Court found at that time that Poynor was impartial and disinterested. (*Id.*). Martinez has failed to produce summary judgment evidence demonstrating that Poyner lacked the impartiality to serve as an umpire. Accordingly, there are no material fact questions as to whether the appraisal award is valid, and the Court concludes that the appraisal award is valid and binding under Texas law.

### B. Plaintiff's Breach of Contract and Extra-Contractual Claims

Having concluded that Martinez failed to demonstrate a material fact dispute as to whether the appraisal award is valid and binding, the Court turns to the effect of Meridian's payment of the appraisal award on Martinez's claims. Meridian contends that, because it tendered the appraisal award, it did not breach the insurance contract and Martinez's extra-contractual claims cannot succeed. (Dkt. No. 47 at 8–21). At the hearing on March 30, 2026, Martinez's counsel acknowledged that if the Court finds that there are no material fact issues as to the validity of the appraisal award, then the effect of the appraisal award and Meridian's payment properly results in the dismissal of all of Martinez's claims. (Mar. 30, 2026 Hearing Recording at 10:55–11:01; *see also* Min. Entry for Mar. 30, 2026). Even so, the Court conducts the summary judgment analysis as to each claim.

#### 1. Breach of Contract

"In Texas, insurance policies are contracts subject to the rules of contract construction." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). The elements of a breach of contract are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Id.* Generally, if the parties invoke appraisal and the insurer pays the appraisal award, and if the insured does not identify any breach other than the failure to pay the amount of the covered loss, the insurer complied with its obligations under the policy. *Ortiz*, 589 S.W.3d at 132–33. Thus, in those circumstances, an insurer is entitled to summary judgment as to the insured's breach of contract claim. *Id.*

Martinez's breach of contract argument relies on the premise that the appraisal award is at least partially invalid. Martinez does not identify any other potential breach of the Policy, nor does he provide any evidence otherwise showing a material fact dispute about his breach of contract claim. Martinez received the full payment that he was entitled to under the Policy. Thus, he cannot maintain a breach-of-contract claim. As such, Meridian's motion for summary judgment as to Martinez's claim for breach of contract is **GRANTED**.

**2. Extra-Contractual Claims**

Meridian also moves for summary judgment on Martinez's extra-contractual claims. (Dkt. No. 47 at 16). Martinez alleges causes of action against Meridian for violations of Chapters 541 and 542 of the Texas Insurance Code, violations of the Deceptive Trade Practices Act (DTPA), breach of the duty of good faith and fair dealing, and fraud. (Dkt. No. 1-2 at 10–17).

Under Texas law, an insurer's payment of an appraisal award can implicate an insured's contractual and extra-contractual claims, but it does not necessarily dispose of every claim arising from the insurer's handling of loss. *See Ortiz*, 589 S.W.3d at 134–135. As such, the Court considers the effect of the payment of the appraisal award and Meridian's payment of that award on each of Martinez's remaining theories of recovery.

**i. Section 541, DTPA, Common Law Fraud, and Bad-Faith Claims**

Meridian argues that Martinez's claims for violations of Chapter 541 of the Texas Insurance Code, violations of the DTPA, fraud, and the common law duty of good faith and fair dealing fail. (Dkt. No. 47 at 15–17). Meridian emphasizes that the appraisal award determined the amount of loss, and Meridian tendered payment for it. (*Id.*).

Texas law requires an insured asserting statutory or common law bad-faith claims to establish an injury for which the insured may recover damages. *See USAA Tex. Lloyds Co. v. Menchaca*¸ 545 S.W.3d 479, 489–90 (Tex. 2018). In *Ortiz*, the Texas Supreme Court applied these principles in the insurance appraisal context and held that an insured who had received payment of the appraisal award could not maintain common law or Chapter 541 bad faith claims where the insured sought no actual damages other than the policy benefits already paid pursuant to the appraisal provision. 589 S.W.3d at 133–35.

Here, Martinez has not identified specific summary judgment evidence establishing an injury outside of the benefits he is already entitled to under the insurance policy. Even assuming *arguendo* that Meridian's alleged conduct could constitute a violation of Chapter 541 or the DTPA, fraud, or the common law duty of good faith and fair dealing, Martinez has failed to identify summary judgment evidence demonstrating a recoverable injury resulting from that conduct. *See Ortiz*, 589 S.W.3d at 134–35. Martinez has not supplemented his allegations as to extra-contractual claims with any specific evidence for consideration at the summary judgment stage. Martinez may not

rely solely on allegations or unsubstantiated assertions to establish a genuine dispute of material fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Nor is the Court required to sift through the summary judgment record in search of evidence to support Martinez's claims. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The record reflects that Martinez has received the Policy benefits set out through the appraisal process, and he has not identified evidence of an independent injury. As such, Martinez has not demonstrated that he can recover on his extra-contractual claims. Meridian's motion for summary judgement on Martinez's Chapter 541, DTPA, fraud, and breach of the duty of good faith and fair dealing claims is **GRANTED**.

**ii. Chapter 542 Prompt Payment Claim**

Next, Meridian moves for summary judgment on Martinez's claim under Chapter 542 of the Texas Insurance Code, known as the Texas Prompt Payment of Claims Act (TPPCA). (Dkt. No. 47 at 19–21). Martinez argues that "had the appraisal panel, honestly and without mistake, considered the damage to the composition shingle roof," the appraisal award would have been significantly higher, and thus, Meridian would have owed more under the policy. (Dkt. No. 52 at 25).

The TPPCA imposes several procedural requirements and deadlines on insurers for acknowledging, investigating, and accepting or rejecting insurance claims. *See* Tex. Ins. Code §§ 542.055–.056. The Supreme Court of Texas addressed the relationship between appraisal and the TPPCA in *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651 (Tex. 2021). There, the court explained that an insurer cannot avoid TPPCA liability merely by making a timely partial payment when the insurer later owes additional benefits on the claim. *Id.* at 656–58. Thus, when an insurer accepts a claim but pays less than the amount ultimately owed, payment of the additional amount following appraisal does not necessarily preclude liability under Chapter 542. *Id.*

Since the *Hinojos* decision, multiple Texas appellate courts have found that an insurer's payment of an appraisal award with all possible TPPCA interest moots a TPPCA claim. *Kester v. State Farm Lloyds*, 692 S.W.3d 670, 675 (Tex. App.—Fort Worth 2023, pet. dism'd); *Rosales v. Allstate Vehicle & Prop. Ins. Co.*, 672 S.W.3d 146, 152–53 (Tex. App.—Dallas 2023, pet. denied) (citing cases and noting that "A majority of federal

courts have held that the formula prescribed by section 542A.007 precludes any award of attorney's fees—and an insurer is entitled to summary judgment on a TPPCA claim—when it preemptively pays both the appraisal award and any possible interest.").

Here, the parties agree that the appraisal award was issued on May 13, 2024. (Dkt. No. 47 at 7; Dkt. No. 52 at 8). Meridian tendered payment of the award with statutory interest, less the deductible and prior payment, for $5,718.51 on May 24, 2024. (Dkt. No. 52-13 at 2). The appraisal award was valid. Martinez does not argue that Meridian's payment was improper because it failed to meet the requirements of the TPPCA. Martinez does not identify any deficiencies with the payment as to the appraisal award. Because Martinez again relies on the invalidity of the appraisal award and does not identify any other deficiencies with the payment, Martinez has failed to show a material fact dispute as to his TPPCA claim. Meridian's motion for summary judgment is **GRANTED** as to Martinez's TPPCA claim.

## V. CONCLUSION

For the foregoing reasons, Meridian's Motion for Summary Judgment, (Dkt. No. 47), is **GRANTED**. Accordingly, all of Plaintiff Joe Martinez's claims against Defendant Meridian Security Insurance Company are **DISMISSED**.

A final judgment will follow.

It is so **ORDERED**.

**SIGNED** on September 28, 2026.

John A. Kazen
United States District Judge